# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

**ARTHUR ROLL**                                                                                 **PLAINTIFF**

**v.**                                                                  **CAUSE NO. 3:12-CV-388-CWR-LRA**

**RANGER DISTRIBUTING, INC.**                                                       **DEFENDANT**

## ORDER

Before the Court is the defendant's motion to dismiss or, in the alternative, motion for summary judgment. Docket No. 12. The plaintiff has responded, Docket No. 14, the defendant has replied, Docket No. 15, and the matter is ready for review. The motion will be granted in part and denied in part.

**I.**        **Factual and Procedural History**

Arthur Roll alleges that his former employer, Ranger Distributing, denied him a promised raise and then fired him upon learning that Roll was diagnosed with emphysema. Docket No. 1, at 2-3. In June 2012, he filed this suit claiming a violation of the Employee Retirement Income Security Act (ERISA), detrimental reliance, and promissory estoppel. *Id.* at 3-4.

**II.**      **Present Arguments**

Ranger Distributing's motion first contends that Mississippi law does not provide at-will employees like Roll a cause of action for detrimental reliance or promissory estoppel. Docket No. 13, at 5-6. It then argues that Roll should be collaterally estopped from relitigating the reasons for his termination, since the South Carolina Department of Employment and Workforce previously determined that Roll was terminated for cause. *Id.* at 6-7. Ranger Distributing attached that agency's written decision to its motion. Docket No. 12-2.

In response, Roll concedes his state law claims, but contends that "[c]ollateral estoppel should not apply to Plaintiff's ERISA claim because of the detailed administrative remedy set out by Congress for such claims." Docket No. 14, at 1. He adds that "the question of whether Defendant terminated Plaintiff to prevent him from further participating in the company's medical insurance plan was not fully litigated at the unemployment hearing, . . . the issues before the agency were wholly distinct from those before the Court." *Id.* at 1-2.

**III.     Standard of Review**

Because the Court will consider the defendant's attachment, it reviews the motion as one for summary judgment.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). The Court views the evidence and draws reasonable inferences in the light most favorable to the non-movant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

**IV.     Discussion**

Roll concedes his state law claims of detrimental reliance and promissory estoppel. Accordingly, Ranger Distributing will be granted summary judgment on those theories.

Roll's federal cause of action, ERISA, makes it unlawful for an employer to terminate an employee "for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . ." 29 U.S.C. § 1140. Generally speaking, that means an employer cannot fire an employee for seeking to use his health insurance coverage. On the other hand, ERISA provides no protection for an employee who is terminated on other lawful grounds.

Roll's argument that collateral estoppel should not apply to his ERISA claim is barred by existing caselaw. In *Stafford v. True Temper Sports*, 123 F.3d 291 (5th Cir. 1997), the plaintiff sued his former employer in federal court alleging that he was terminated "in retaliation for his substantial (present and future) medical expenses and to prevent the vesting of his pension benefits, in violation of [the employer's] duties under ERISA." *Id.* at 293-94. The employer was granted summary judgment after pointing to a decision of the Mississippi Employment Security Commission which concluded that the plaintiff was fired for "intentionally manipulat[ing] the machinery to make it appear that he was working longer hours than he actually had worked." *Id.* at 293.

The Fifth Circuit agreed that the Mississippi agency decision had resolved the factual dispute as to why the employee had been terminated, making further litigation unnecessary.

> The federal courts must give an agency's fact finding the same preclusive effect that they would a decision of a state court, when the state agency is acting in a judicial capacity and gives the parties a fair opportunity to litigate. This is done for the purposes of judicial economy, and because a losing litigant deserves no rematch after

2

> a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.

*Id.* at 294 (quotation marks and citations omitted). The Fifth Circuit specifically held that collateral estoppel "can be applied" in ERISA cases because Congress did not establish a comprehensive administrative scheme to resolve disputes arising under that statute. *Id.* Roll's argument is therefore barred, although he has preserved it for further review.

Roll's second and final argument is that the South Carolina Department of Employment and Workforce decision should not be applied against him because "the question of whether Defendant terminated Plaintiff to prevent him from further participating in the company's medical insurance plan was not fully litigated at the unemployment hearing." Docket No. 14, at 1-2.

Had Roll made this argument with respect to a decision of the Mississippi Employment Security Commission, it likely would have been barred under *Stafford*. An employee's failure to raise a theory of wrongful discharge before the Mississippi Employment Security Commission cannot be remedied in a subsequent wrongful discharge lawsuit. That is because the State of Mississippi provides an "elaborate administrative review process (which, it should be pointed out, went through many layers before the matter got to the federal courts)." *Stafford*, 123 F.3d at 294. As the Fifth Circuit wrote in that case, "[t]he fact that he may not have used certain strategies or litigated to the extent that (in hindsight) he and his attorney now believe he should have is immaterial." *Id.* "As far as Mississippi is concerned, the decisions of MESC have preclusive weight in Mississippi courts." *Id.* at 295.

The courts of South Carolina, however, have determined that their own state agency's unemployment decisions are not accorded such deference. According to the Supreme Court of that state, "findings made during [a South Carolina Employment Security Commission] hearing should not receive collateral estoppel effect." *Shelton v. Oscar Mayer Foods Corp.*, 325 S.C. 248, 252 (1997).

> The purpose of the ESC hearings is to quickly provide benefits to persons becoming unemployed through no fault of their own. The legislature intended to minimize procedural hurdles before the ESC so as to enable unemployed claimants to obtain prompt decisions regarding entitlement to unemployment benefits from the ESC. The purposes of the ESC are in conflict with the doctrine of collateral estoppel; therefore, public policy dictates the findings made during an ESC hearing should not receive collateral estoppel effect.

> Further, the narrow issue the ESC decides is simply whether the claimant is qualified to receive employment benefits. Thus, the jurisdiction of the ESC is limited. By focusing on a narrow issue, the ESC is able to expeditiously determine whether an employee is entitled to unemployment benefits. This serves the purpose of providing benefits quickly to employees who are unemployed through no fault of their own. To apply collateral estoppel to ESC decisions would result in ESC hearings becoming forums for employers and employees to engage in lengthy civil litigation of claims relating to an employee's discharge. Thus, the intent underlying the employment security law would be frustrated.
>
> Employers normally are not compelled to intensely contest ESC hearings because the stakes are not great in such hearings. An ESC hearing only determines whether an employee was discharged for cause and thus disqualified from receiving unemployment benefits. A wrongful termination lawsuit determines whether the employer wrongfully discharged the employee and seeks to place blame on the employer. The damages available in a wrongful discharge lawsuit are much greater than unemployment benefits. Thus, an employer has more incentive to fully contest a civil suit.
>
> Further, employees are often unrepresented in ESC hearings. If collateral estoppel applied, an unwary employee could unknowingly forfeit an opportunity to litigate significant issues in a subsequent civil action.

*Id.* at 252-53 (citations omitted).

Such a system may create a risk that two tribunals could reach inconsistent outcomes. If the "narrow" issue decided by the South Carolina agency is in fact the same issue raised by the employee (or employer) in a later employment lawsuit, it may be the case that the employee (or employer) receives the proverbial second bite at the apple. That would be contrary to well-established norms of finality and judicial economy. The Supreme Court of South Carolina, though, appears to have weighed that risk against other public policy goals, including its evident desire for unemployment proceedings to move expeditiously (which benefits employees and employers with simpler disputes than those presented by these collateral estoppel cases), as well as its concern for the perceived unfairness that could result from holding parties – *pro se* employees as well as employers – to findings of fact "established" in a expedited proceeding. Balancing all of these concerns was up to the state Supreme Court.

The Supreme Court of South Carolina ultimately chose a system where its unemployment proceedings move more quickly, resolve fewer issues, and do not have binding effect on later suits

arising from the same occurrences. Accordingly, the South Carolina Department of Employment and Workforce's decision resolving Roll's claim for unemployment benefits has no preclusive effect and does not collaterally estop Roll from maintaining this employment suit in this Court.

**V.     Conclusion**

The motion for summary judgment is granted in part and denied in part. Within 10 days, the parties shall contact the chambers of the Magistrate Judge for entry of a Case Management Order.

**SO ORDERED**, this the 31st day of January, 2013.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE